Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/23/2026 08:09 AM CST

State of Nebraska, appellee, v.
James A. Wilson, appellant.

___ N.W.3d ___

Filed January 23, 2026.    No. S-24-530.

1. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

2. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

3. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

4. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

5. ____: ____. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

6. **Proof: Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

7. **Effectiveness of Counsel: Appeal and Error.** In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case.

8. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

9. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

10. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

11. **Rules of Evidence: Words and Phrases.** Under Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016), relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

12. **Criminal Law: Rules of Evidence: Other Acts.** In a criminal case, Neb. Evid. R. 404(1), Neb. Rev. Stat. § 27-404(1) (Cum. Supp. 2024), operates as a broad exclusionary rule of relevant evidence that speaks to a criminal defendant's propensity to have committed the crime or crimes charged.

13. **Rules of Evidence.** Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), allows the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

14. **Evidence: Words and Phrases.** Unfair prejudice means an undue tendency to suggest a decision based on an improper basis.

15. **Effectiveness of Counsel: Trial.** Trial counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance.

16. **Trial: Attorneys at Law.** Trial counsel is afforded due deference to formulate trial strategy and tactics.

17. **Effectiveness of Counsel: Trial: Appeal and Error.** Appellate courts do not use perfect hindsight to criticize unsuccessful trial strategies.

Rather, they must assess trial counsel's performance from counsel's perspective when counsel provided the assistance.

18. **Effectiveness of Counsel: Presumptions: Appeal and Error.** There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess counsel's reasonable strategic decisions.

19. **Effectiveness of Counsel: Trial: Appeal and Error.** It is more the exception than the rule that defense counsel's strategy can be reasonably inferred from the trial record on direct appeal.

20. **Witnesses.** It is generally improper for a witness to testify as to the credibility of another witness.

21. **Prosecuting Attorneys: Witnesses.** It is improper for a prosecutor to inquire of a witness whether another person may or may not be telling the truth.

22. **Criminal Law: Trial: Prosecuting Attorneys.** Prosecutors have a duty to conduct criminal trials in a manner that provides the accused with a fair and impartial trial and may not inflame the jurors' prejudices or excite their passions against the accused. This rule includes intentionally eliciting testimony from witnesses for prejudicial effect.

Appeal from the District Court for Douglas County: Horacio J. Wheelock, Judge. Affirmed.

Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Papik, J.

The State prosecuted James A. Wilson based on events that began with a confrontation over a food delivery and ended when he fired a gun at a police officer. Wilson was ultimately convicted of attempted second degree murder, two counts of use of a firearm to commit a felony, discharging a firearm at an occupied motor vehicle, and two counts of terroristic threats. Now on appeal, Wilson claims his trial counsel was ineffective in failing to adequately challenge testimony about

his character and testimony involving the veracity of other witnesses, as well as evidence he claims was unduly emotional and inflammatory. We affirm.

## I. BACKGROUND

While working as a food delivery driver, Wilson had a dispute with a pair of customers and later that same day, exchanged gunshots with a police officer. Wilson was tried before a jury on charges of one count of attempted second degree murder, see Neb. Rev. Stat. §§ 28-304 (Reissue 2016) and 28-201(4)(a) (Cum. Supp. 2024); two counts of use of a firearm to commit a felony, see Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Reissue 2016); one count of discharging a firearm at an inhabited house, an occupied building, or an occupied motor vehicle, see Neb. Rev. Stat. § 28-1212.02 (Reissue 2016); and two counts of terroristic threats, see Neb. Rev. Stat. § 28-311.01 (Reissue 2016). The two counts of terroristic threats and one count of use of a firearm to commit a felony arose out of Wilson's interactions with the customers. Wilson's encounter with the police officer was the basis for the charges of attempted second degree murder; the second count of use of a firearm to commit a felony; and discharging a firearm at an inhabited house, occupied building, or occupied motor vehicle.

The jury heard evidence that one evening, Wilson left his house to make a food delivery in Omaha, Nebraska. Wilson's wife at the time testified that Wilson had come home angry and that before leaving their house, Wilson said that he would "either wind up in jail or dead."

According to evidence at trial, that same evening, Wilson brought a food delivery to Daniel and Sandra Bartlett. After placing the Bartletts' food on the front step of their house, Wilson loudly knocked on the front door three or four times. Daniel testified that he was surprised at how loudly Wilson had "bang[ed]" on the door for a food delivery and thought Wilson might break the screen on the door. When Daniel

opened the door to retrieve the food, Wilson said that the tip
was "shit." Daniel testified that Wilson sounded angry. Wilson
and Daniel exchanged some words, and Daniel recalled that
Wilson challenged him to a fight.

Daniel recounted that he then stepped outside to prevent
Wilson from coming inside. Daniel testified that at that point,
Wilson pulled a handgun from his waistband "very fast"
and, holding it in his right hand, pointed it at Daniel's face.
According to the Bartletts' account, Daniel reentered the house
and told Sandra that Wilson had pulled a gun on him. They
both testified that Sandra went to the doorway and exchanged
some more words with Wilson. Sandra testified that during
this time, Wilson was waving his arms around while holding
his gun in his left hand. Both Daniel and Sandra identified the
gun as a two-toned handgun. Daniel further testified that it
was a 9-mm handgun. It is undisputed that Wilson was carry-
ing a two-toned 9-mm handgun in a holster that day. Footage
from a video doorbell camera viewed by the jury showed por-
tions of the confrontation not including the moments when,
according to Daniel, Wilson drew his gun and pointed it at
Daniel. In the footage, which was otherwise generally consis-
tent with the Bartletts' account, Wilson held a black object in
his hand, but it was not plainly evident in the footage that it
was a gun. Soon afterward, Wilson left in his vehicle.

There was evidence that a short distance from the Bartletts'
house, Wilson stopped his vehicle very close to a car that
was parked on the wrong side of the road, nearly touching
the car's bumper, and honked his vehicle's horn. According
to testimony and video footage in evidence, Daniel yelled to
warn the occupants of the parked car that Wilson was armed.
The jury heard evidence that Wilson exited his vehicle, yelled
at the occupants of the parked car, and punched the parked
car's back passenger window twice, shattering the window.
No charges were filed relating to the incident involving the
parked car.

Meanwhile, the Bartletts reported to police that Wilson had pulled a gun on them. Based on the Bartletts' report, Omaha police officer Tamara Phillips used Wilson's license plate number to obtain his address. Officer Phillips testified that she drove to the address and waited nearby for backup to arrive. Officer Phillips recounted that while she waited, she saw Wilson's vehicle pull into his driveway. For the safety of anyone inside the house, Officer Phillips decided to approach Wilson on her own to make a felony stop.

Officer Phillips testified that she pulled into Wilson's driveway and tried to activate the siren and lights on her police cruiser but did not succeed. Officer Phillips testified that as she pulled into the driveway, she saw "the barrel of [Wilson's] gun pointed towards [her]." Officer Phillips fired at Wilson through her windshield and ran for cover. Officer Phillips testified that regardless of whether Wilson fired first, her reaction would have been the same because she was trained to shoot when confronted with a firearm.

Wilson and Officer Phillips exchanged gunfire as Officer Phillips ran into the street. The State presented evidence that after Wilson had emptied his gun's magazine, he threw the gun at the back of Officer Phillips' police cruiser. Wilson's gunfire left holes in the police cruiser. Officer Phillips sustained a graze wound to the back of her arm; Wilson was shot twice in the leg.

After Wilson threw his gun, Officer Phillips approached him and ordered him to the ground. Additional officers arrived at the scene, and Wilson was taken into custody.

Wilson testified in his own defense and offered a different account. Wilson acknowledged that he was angry and frustrated on the evening of the events at issue. Although he admitted to carrying a gun in a holster that evening, he denied pulling the gun on the Bartletts, claiming instead that he was holding his cell phone. Wilson explained that he was probably checking his cell phone for his next delivery or using his cell phone's camera to document the delivery, as was his routine

practice. Wilson admitted to the following: engaging in a verbal altercation with the Bartletts, punching out the window of the parked car after leaving the Bartletts' house, assuming that the police would be on the way to his house after the incidents involving the Bartletts and the parked car, seeing a police officer parked near his house, and seeing the police cruiser pull into his driveway without its lights or siren engaged.

Wilson's account suggested that he shot at Officer Phillips in self-defense. Wilson testified that he shot at Officer Phillips on "reaction and self-preservation." According to Wilson, who is left-handed, when Officer Phillips pulled into the driveway, he was holding his keys and his cell phone in his right hand. He believed that he was putting them in his pocket when he heard Officer Phillips fire at him. Wilson denied showing his gun or removing it from its holster on his left hip until after he heard gunshots and saw a gun pointed at him. He maintained that this was the first time he unholstered his gun that evening.

After closing arguments and deliberations, the jury found Wilson guilty of each of the six charged counts. The district court accepted the jury's verdicts and sentenced Wilson to an aggregate term of 47 to 81 years' imprisonment.

Represented by new counsel, Wilson appeals and raises several claims of ineffective assistance of trial counsel. We summarize additional facts relevant to those claims in the analysis section below.

## II. ASSIGNMENTS OF ERROR

Wilson alleges, restated, consolidated, and reordered, that his trial counsel was ineffective in (1) failing to properly respond to impermissible character evidence presented in (a) the testimony of Wilson's former wife and (b) the audio of a call from the 911 emergency dispatch service; (2) failing to object when the prosecutor asked Wilson and a police officer about the veracity of other witnesses; and (3) failing to properly object to unduly emotional and inflammatory testimony

(a) that an Omaha police officer was previously killed in the line of duty and (b) that Wilson described the individuals in the parked car as "'a couple of [B]lack kids.'"

## III. STANDARD OF REVIEW

[1,2] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Hagens, ante* p. 65, 26 N.W.3d 174 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## IV. ANALYSIS

On direct appeal, Wilson assigns three categories of ineffective assistance of trial counsel: failure to properly respond to impermissible character evidence, failure to object to the State's questions about the veracity of other witnesses, and failure to properly object to unduly emotional and inflammatory evidence. Within each category, Wilson claims multiple instances of ineffective assistance.

But before addressing Wilson's individual ineffective assistance of counsel claims, we review the general principles that govern them.

[3-7] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable

probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case. *Id.*

[8,9] To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

[10] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* However, we will not address an ineffective assistance of counsel claim on direct appeal if it requires examination of facts not contained in the record. See *State v. Vazquez, supra*.

As we explain in the subsections that follow, we conclude that Wilson's ineffective assistance of counsel claims are without merit, inadequately assigned, or not fit for resolution on direct appeal.

## 1. Character Evidence

Wilson avers that his trial counsel was ineffective in failing to adequately respond to numerous instances of impermissible character evidence presented during his former wife's testimony, during an audio recording of a 911 call, and during closing arguments. Before we resolve these claims, we first recite pertinent evidence rules.

[11] To be admissible, evidence must be relevant. See Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2016). Under Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016), relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). But not all relevant evidence is admissible.

[12] In a criminal case, Neb. Evid. R. 404(1), Neb. Rev. Stat. § 27-404(1) (Cum. Supp. 2024), operates as a broad exclusionary rule of relevant evidence that speaks to a criminal defendant's propensity to have committed the crime or crimes charged. *State v. Vazquez, supra.* Rule 404(1) renders propensity evidence—as to the accused—inadmissible unless it is first offered by an accused, and even then, only when it evidences a pertinent character trait. See *State v. Wheeler*, 314 Neb. 282, 989 N.W.2d 728 (2023). See, also, Neb. Evid. R. 405, Neb. Rev. Stat. § 27-405 (Reissue 2016) (method of proving character); Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 2016) (regarding attacking witness' credibility with evidence of character for untruthfulness).

[13,14] Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), allows the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). Most, if not all, evidence offered by a

party is calculated to be prejudicial to the opposing party. *Id*. Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *Id.* Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. *Id.* When considering whether evidence of other acts is unfairly prejudicial, we consider whether the evidence tends to make conviction of the defendant more probable for an incorrect reason. *Id.*

We apply these concepts to Wilson's claims of ineffective assistance of counsel regarding character evidence, and we ultimately conclude that his arguments were inadequately assigned, lack merit, or cannot be resolved on direct appeal.

### (a) Testimony by Former Wife

At the time of the events at issue in this case, Wilson was married to Amber Wilson. Prior to trial, they divorced. The State called Amber as a witness for its case in chief. On appeal, Wilson argues that his trial counsel was ineffective in failing to adequately object or otherwise intervene at several points during Amber's testimony because she testified to improper propensity or character evidence and made statements that were unduly prejudicial or misleading and confusing to the jury. The disputed excerpts fall into distinct groups: Wilson's relationships, Wilson's employment history, Wilson's statements, Wilson's demeanor, and Wilson's character for untruthfulness.

Wilson's core contention is that the various instances of deficient performance by his counsel during Amber's testimony allowed for the admission of testimony that prejudiced him by diminishing his credibility in the eyes of the jury. And he posits that this affected the outcome of his trial because in his version of events, his gun was in its holster during the confrontation with the Bartletts and remained there until after Officer Phillips fired her weapon. Wilson essentially claims

that if the jury had believed his account of the evening, it would not have returned the guilty verdicts that it did.

As we will explain, most of Wilson's claims related to Amber's testimony lack merit because Wilson cannot show deficient performance or prejudice. Regarding testimony about Wilson's character for untruthfulness, however, we conclude that the record on direct appeal is insufficient to address Wilson's claims.

### (i) Relationships

Among other things, the State asked Amber about Wilson's relationships with his child and stepchildren:

> Q Okay. Do you know where [Wilson's 12- or 13-year-old son] lives?
>
> A He lives [here] in Omaha.
>
> Q Okay. And does your ex-husband, . . . Wilson, have a relationship with that son?
>
> A No.
>
> . . . .
>
> Q Does he have — well, describe his relationship with your children.
>
> A The older two was pretty non-existent, but he had a relationship with my youngest son. My youngest son's father was not in the picture[.]
>
> Q Okay. And — but not a relationship or was it a relationship at all with your older two?
>
> A There was a relationship, but I wouldn't call it a good or a steady one.

Wilson's counsel did not object to this testimony.

The State also asked about Amber's relationship with Wilson prior to his arrest. She testified that there were good days but that "there was a lot of anger, a lot of distrust [by Wilson toward her] and anguish. . . . A lot of fighting." Wilson's counsel did not object.

Wilson contends that his trial counsel was ineffective in not objecting to the foregoing testimony about his relationships,

asserting that evidence that he was a "poor father" and a "poor husband" was "either not relevant evidence or it was propensity evidence attacking [his] character." Brief for appellant at 26. He further argues that the evidence was "unduly prejudicial, misleading and confusing to the jury." *Id*. at 28.

Even if Wilson's trial counsel was deficient in not objecting to and seeking to strike the testimony about his relationships, we do not perceive that it prejudiced him. To show prejudice, Wilson would have to demonstrate a reasonable probability that but for this testimony, the outcome of his trial would have been different. See *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). We do not see a reasonable probability that without this testimony about Wilson's relationships, the jury would have reached different conclusions on the disputed issues at trial—whether Wilson displayed a gun to the Bartletts and whether he drew his gun before Officer Phillips shot at him. Therefore, this claim of ineffective assistance of counsel fails.

### (ii) Employment History

The State asked Amber about Wilson's employment history:

Q When you say [he had] multiple [jobs during the 7 years you were married], about how many?

A Probably close to 15, 20.

. . . .

Q So did he — was he unable to hold a job?

A Yes.

Q And did that cause any tension or stress in your marriage?

A Yes.

Amber also testified that before Wilson's arrest, "[n]o job was satisfying him, and nobody did what he wanted them to do and pay him what he thought he deserved to be paid." Wilson's counsel did not object to any of this testimony.

Over a relevancy objection, Amber also testified that Wilson had expressed frustration with the food delivery job because

customers did not tip appropriately. The State continued with more questions about the food delivery job:

Q And did he ever discuss with you or let you know his feelings about having to deliver food to other people?

A Yes.

Q What would that be?

A That people were basically lazy and didn't know how to tip people correctly for the work that they were doing.

Wilson's counsel did not object.

On direct appeal, Wilson asserts that when his counsel did not object, he received ineffective assistance because evidence that he was a "poor employee" or was "unreliable" was "either not relevant evidence or it was propensity evidence attacking [his] character." Brief for appellant at 26. Wilson also claims that the evidence was "unduly prejudicial, misleading and confusing to the jury." *Id*. at 28.

We note that Wilson's counsel did object to Amber's testimony that Wilson had said customers did not tip appropriately. But we need not decide whether Wilson's counsel otherwise performed deficiently regarding evidence of his employment because, even if there was deficient performance, Wilson cannot show that it prejudiced him. Amber's testimony was partially cumulative of Wilson's; Wilson himself testified that he had held 15 to 20 jobs throughout his marriage to Amber and that it was a source of tension in their relationship. See *State v. Sawyer*, 319 Neb. 435, 22 N.W.3d 650 (2025) (even if trial counsel performed deficiently in not objecting to witness' testimony, defendant was not prejudiced because witness' testimony was cumulative of other evidence). To the extent that the evidence was not cumulative, there is not a reasonable probability that without Amber's testimony about Wilson's employment, the jury would have reached different conclusions as to whether Wilson pulled a gun on the Bartletts and whether he pointed his gun at Officer Phillips before she shot at him. Accordingly, this claim of ineffective assistance of counsel does not warrant reversal.

### *(iii) Statements About Death and Jail*

Amber testified that before leaving for the food delivery, Wilson said he was going to "wind up in jail or dead." The State inquired whether Wilson had stated, on other occasions, that he wanted to go to jail. Amber testified that he had, and that he said he would be less of a burden if he went to jail. Wilson's counsel did not object.

Now on direct appeal, Wilson argues that he received ineffective assistance when his trial counsel did not challenge this testimony, because evidence that he was "despondent" was not relevant or was improper propensity evidence attacking his character. Brief for appellant at 26. Again, Wilson also asserts that the evidence was "unduly prejudicial, misleading and confusing to the jury." *Id*. at 28. We disagree. We do not view this testimony as irrelevant or as improper character evidence, nor do we perceive that the probative value was substantially outweighed by the danger of unfair prejudice.

We do not understand the testimony to be character evidence. "Though difficult to define, character has been described as the generalized disposition or tendency to act in a particular way in all the varying situations of life, caused by something internal to the actor that arises from that person's moral being." *State v. Oldson*, 293 Neb. 718, 745, 884 N.W.2d 10, 38 (2016). See, also, *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019) (distinguishing character's connotation of enduring general propensity from situationally specific emotion). Amber did not comment on Wilson's character, as we have explained the concept; she merely repeated what he had said on a previous occasion.

And the testimony was relevant. Intent was an element of all the crimes charged. See, §§ 28-304; 28-201(4)(a); 28-1205(1)(a) and (c); 28-1212.02; and 28-311.01. Intent is the state of mind operative at the time of an action. *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985). See, also, *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024) (intent is generally defined as state of mind accompanying an act). We

have defined motive as "that which leads or tempts the mind to indulge in a criminal act." See *State v. Thomas*, 303 Neb. at 973, 932 N.W.2d at 722. Testimony regarding Wilson's statements about death or jail informed the fact finder about Wilson's state of mind leading up to his arrest and suggested that he had a motive—ending up dead or in jail—and, thus, intent to commit the crimes charged. See *id.* (motive, even when not element of charged crime, is relevant to State's proof of intent element of crime).

Moreover, given that the disputed testimony goes rather squarely to motive and intent, we reject the notion that its probative value was substantially outweighed by the danger of unfair prejudice; we do not see how it would lure the jury into convicting Wilson on a ground different from proof specific to the charged offenses. See *State v. Oldson, supra*. We conclude that Wilson's trial counsel did not perform deficiently in not challenging the testimony above.

### *(iv) Demeanor*

Amber testified about Wilson's demeanor leading up to his arrest:

Q Okay. How would you describe [Wilson's] demeanor on the days leading up to the [evening of his arrest]?

A Angry.

Q Okay. How about — was it just the days leading up or the weeks or the months? Describe for us how his demeanor had been for the last couple of years.

A It was progressive — I would say months — where things got very bad. . . .

Q Okay. And did you ever express any concerns to your parents about his demeanor?

A Yes, I did. I referred to [Wilson] as a ticking time bomb.

Q Why?

A He was an unpredictable force. You never knew what [Wilson] you were getting from day-to-day.

Q Okay. Were you afraid of him?
A Yes.

Wilson's counsel did not object, and the State referred to this testimony in its closing argument.

Now, Wilson asserts that his counsel's failure to object was ineffective assistance. That is because he claims testimony that he had a "poor demeanor" or that he was "angry, scary, . . . or dangerous" was not relevant or was improper propensity evidence attacking his character. Brief for appellant at 26. And Wilson asserts again that the evidence was "unduly prejudicial, misleading and confusing to the jury." *Id*. at 28.

We need not decide whether this was deficient performance. Even assuming without deciding that it was, Wilson cannot show prejudice. Amber's testimony that he was angry, unpredictable, and potentially explosive during the period leading up to his arrest was cumulative of other evidence that Wilson was angry, unpredictable, and potentially explosive during the series of events that began with the food delivery and ended in a shootout with Officer Phillips. See *State v. Sawyer*, 319 Neb. 435, 22 N.W.3d 650 (2025) (even if trial counsel performed deficiently in not objecting to witness' testimony, defendant was not prejudiced because witness' testimony was cumulative of other evidence). Video footage viewed by the jury showed Wilson loudly banging on the Bartletts' door. Daniel testified that Wilson sounded angry when they spoke to each other, and additional video footage captured an exchange of insults between Wilson and Sandra in what could be perceived as an angry tone of voice. When Wilson encountered a car parked on the wrong side of the street, he engaged in another verbal confrontation and shattered the car's window. Finally, in light of this evidence, we do not agree that the disputed testimony was unduly prejudicial or misleading or confusing for the jury. Because the jury heard the testimony about Wilson's behavior and viewed the related video footage, it is not probable that the jury based its decision on

Amber's testimony, if the testimony was indeed inadmissible.
See *State v. Oldson, supra*.

### (v) Untruthfulness

The State asked Amber whether Wilson was a truthful person, and she replied that he was not. Wilson's counsel did not object to this testimony.

The State elicited additional testimony that Wilson had told Amber "stories" about his employment:

> Q All right. And during the day — I want to back up before this incident occurred. During that day, though, was [Wilson] working?
>
> A No.
>
> Q Okay. Do you remember? Was he supposed to start a new job either that day or the day before?
>
> A Yes.
>
> Q Okay. Tell me about that.
>
> A I believe it was at [a trucking company] and he was supposed to be a driver of some sort. And the story that I was told was that he showed up late and the truck or the people or whatever the situation was took off without him. So he was angry and came home.
>
> Q Okay. When you say the story you were told, did you suspect — did you have reason — strike that.
>
> Did you question the veracity of that?
>
> A Yes.
>
> Q Why?
>
> A I had been told a lot of stories about employment in the past.

Wilson's trial counsel made no objection.

On direct appeal, Wilson contends that this testimony was inadmissible and that his counsel was ineffective in not objecting to it. He argues that the testimony that he was "dishonest" was "either not relevant evidence or it was propensity evidence attacking [Wilson's] character." Brief for appellant at 26. And he claims that he did not "open[] the door" to

this testimony for it to be admissible because Wilson had not presented evidence of his character for truthfulness before Amber testified. *Id.* Wilson further claims the testimony was "unduly prejudicial, misleading and confusing to the jury." *Id*. at 28. The State does not challenge Wilson's position that the testimony was inadmissible; it argues only that even if it was deficient performance not to object to it, Wilson cannot show prejudice.

It does appear that Wilson's trial counsel could have made a successful objection to this testimony on the grounds that it was improper character evidence. As we have said, under Rule 404(1)(a), evidence of an accused's character is not admissible to show that he or she acted in conformity with that character unless it is evidence of a pertinent character trait and the accused offered it first. See, also, Rule 405. For starters, Wilson's character for truthfulness does not appear to be pertinent to the crimes charged—attempted second degree murder, use of a firearm to commit a felony, discharging a firearm at an occupied motor vehicle, and terroristic threats. See *State v. Vogel*, 247 Neb. 209, 526 N.W.2d 80 (1995) (in criminal action, pertinent character traits are those involved in crime on trial, e.g., honesty in theft cases or peacefulness in murder cases). Moreover, it is undisputed that Amber's testimony on direct examination by the State was the first mention of Wilson's character for truthfulness. Wilson himself had not had the opportunity to offer character evidence because he had not yet presented his case or testified. See Rules 404(1)(c) and 608.

[15] But just because an objection may have led to the exclusion of the testimony, that does not mean we can resolve Wilson's ineffective assistance of counsel claim on direct appeal. To show deficient performance under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. See *State v. Corral*, 318 Neb. 940, 20 N.W.3d

372 (2025). Trial counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance. *Id*.

[16-19] Trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* We do not use perfect hindsight to criticize unsuccessful trial strategies. *Id.* Rather, we must assess trial counsel's performance from counsel's perspective when counsel provided the assistance. *Id.* There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess counsel's reasonable strategic decisions. *Id.* It is more the exception than the rule that defense counsel's strategy can be reasonably inferred from the trial record on direct appeal. *Id.*

We have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the "rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial." *State v. Casares*, 291 Neb. 150, 155, 864 N.W.2d 667, 672 (2015). "Even when we have expressed skepticism that any reasonable trial strategy could be revealed through an evidentiary hearing, we have held that the record on direct appeal was insufficient to address the ineffective assistance claim." *State v. Corral*, 318 Neb. at 961, 20 N.W.3d at 395, citing *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011); *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003).

This is not one of the rare cases where the record demonstrates that trial counsel's failure to object was so egregious an error that it resulted in a fundamentally unfair trial. It is simply not clear from the record whether Wilson's counsel withheld objections based on trial strategy. Although Amber's testimony about Wilson's character for untruthfulness may have been inadmissible, the record is insufficient for us to decide whether his counsel rendered ineffective assistance in not objecting to it.

Similarly, we are unpersuaded by the State's argument that even if the testimony about Wilson's untruthfulness was inadmissible, the record on direct appeal is sufficient to conclusively determine that the testimony did not prejudice Wilson. The State asserts that Amber's testimony about Wilson's untruthfulness could not have affected the outcome of trial because the Bartletts' accurate descriptions of Wilson's gun demonstrated that their version of events was necessarily the correct one and because the evidence overall supported Wilson's convictions. Certainly, it is proper to consider the strength of admissible evidence in deciding whether there is a reasonable probability that any deficient performance would have resulted in a different outcome. See *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). But here, the heart of Wilson's trial defense was his position that events did not unfold the way the Bartletts and Officer Phillips maintained they did.

According to Wilson's account, the elements of the charged offenses could not be satisfied because he did not threaten the Bartletts with his gun and because he removed it from its holster in self-defense only after Officer Phillips fired at him. The State essentially contends that faced with conflicting stories, the jury could not have found Wilson credible; but this was a determination that was the province of the jury. See *State v. Anderson*, 317 Neb. 435, 10 N.W.3d 334 (2024), *cert. denied* ___ U.S. ___, 145 S. Ct. 1331, 221 L. Ed. 2d 418 (2025) (it is in fact finder's province to resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented). The outcome of the trial depended on whether the jury found Wilson more credible than other witnesses, and Amber's testimony about Wilson's untruthfulness spoke directly to Wilson's credibility.

Because we cannot conclusively determine whether Wilson's counsel was deficient in failing to object to evidence that Wilson was not a truthful person or whether Wilson was prejudiced by his counsel's failure to do so, we find the

record insufficient to resolve this claim. See *State v. Kruger, ante* p. 361, 27 N.W.3d 398 (2025).

### (b) 911 Call

The jury heard the recording of a 911 call made by Wilson's neighbor to report that someone was firing gunshots at a police officer. In the recording, the neighbor's boyfriend told the dispatcher that shots were coming from someone in Wilson's house and that "they have had problems over there before." No one on the call identified Wilson as the shooter. Wilson's trial counsel did not object.

On appeal, Wilson asserts that this statement was impermissible character evidence. He claims that his trial counsel was ineffective in failing to seek redaction of it.

Here, the record establishes that counsel's performance was not deficient in not seeking redaction of the statement that "they have had problems over there before" because it is not clear who or what the speaker meant. And even if trial counsel's performance was deficient, Wilson cannot show prejudice. Given all the evidence, Wilson cannot show a reasonable probability that if the statement about "problems over there" had been redacted, the outcome of his trial would have been different.

### (c) Closing Arguments

In closing arguments, trial counsel told the jury that Wilson was on trial for the crimes charged, not for acting like a "jerk," and trial counsel referred to Wilson as a "jerk" several more times. Wilson argues that his trial counsel was ineffective in calling him a "jerk" in closing remarks. However, this argument is not encompassed in Wilson's assignments of error, where he pinpoints "the State's [e]vidence of [his] [c]haracter [p]resented by [Amber]" and "[i]mproper [a]dmission of . . . [e]vidence"—he does not reference closing arguments, which are not evidence. See *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016). An alleged error must be both specifically assigned and specifically argued in the brief of the party

asserting the error to be considered by an appellate court. *State v. Kruger, supra*. Because Wilson's assignments of error did not specifically identify ineffective assistance related to closing arguments, we will not dwell on this argument further.

## 2. Questions About Veracity
### of Witnesses

On appeal, Wilson claims that his trial counsel rendered ineffective assistance in failing to object to questions about the veracity of other witnesses posed to him and to a police officer. We address each allegation in turn and reject Wilson's claims of ineffective assistance of counsel.

### (a) Questions Posed to Wilson

Wilson testified at trial. On cross-examination, the State asked him about the veracity of multiple witnesses concerning various topics. On appeal, Wilson claims that his trial counsel was ineffective in not objecting to any of those exchanges, which he classifies as improper attempts to elicit Wilson's testimony about the credibility of other witnesses. Wilson argues that questions about the veracity of other witnesses "invade the province of the jury, lack probative value, distort the prosecution's burden of proof, create 'no win' situations and are argumentative." Brief for appellant at 34.

[20,21] We recently addressed whether it was ineffective assistance of counsel not to object to questions posed to a criminal defendant about another witness' veracity. In *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025), we observed that it is generally improper for a witness to testify as to the credibility of another witness. See, also, *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). We also recognized that it is improper for a prosecutor to inquire of a witness whether another person may or may not have been telling the truth. *State v. Vazquez, supra*. See *State v. Archie, supra*. In *Vazquez*, however, we declined to decide whether to adopt a bright-line rule prohibiting all questions asking a defendant to comment on the veracity of another witness or whether to instead

permit such questions depending on how they are phrased or depending on the factual circumstances. We reasoned that even assuming without deciding that defense counsel was deficient in not objecting, the defendant could not show prejudice "because in response to a successful objection, the prosecutor could be expected to simply rephrase the question in a way that elicited the same information . . . but without asking [for] comment directly on the veracity of another witness." *State v. Vazquez*, 319 Neb. at 251, 21 N.W.3d at 666.

We conclude that *Vazquez* is controlling here. Like the appellant in *Vazquez*, Wilson claims that his trial counsel was ineffective in not objecting when the prosecutor asked him, the criminal defendant, about the veracity of other witnesses. Certainly, we caution that the credibility of a witness is the province of the fact finder and that no witness, expert or otherwise, should give an opinion that another mentally and physically competent witness is or is not telling the truth. See *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989). But even if trial counsel performed deficiently in not objecting to such testimony by Wilson, Wilson cannot demonstrate prejudice. Like the scenario in *Vazquez*, had Wilson's trial counsel objected, the prosecutor could have rephrased the questions to obtain the same information from Wilson—that he disagreed with the other witnesses' versions of events—and the jury could have made its credibility assessment. Consequently, we conclude that this claim of ineffective assistance of counsel is meritless.

### (b) Questions Posed to Police Officer

Officer Derek Urban was involved in Wilson's transport and medical treatment after his arrest. While waiting for medical treatment, Officer Urban's body camera captured unsolicited statements made by Wilson, including a statement that Wilson did not shoot at anyone. At trial, the State questioned Officer Urban about statements he heard Wilson make, including the following:

Q Based on what you knew, the statement made by
. . . Wilson, "I didn't shoot anybody," was that a truthful
statement?

A You're saying was his statement truthful?

Q Yes.

A I did not believe it to be truthful.

Wilson's trial counsel did not object.

On direct appeal, Wilson assigns that his trial counsel was ineffective in not objecting to Officer Urban's testimony that he did not believe Wilson's statement to be truthful. Wilson's argument generally cites authority that it is improper for one witness to testify as to the credibility of another witness and that there is "unfair prejudice involved with opinion evidence from law enforcement officers because a jury may be predisposed to give more weight to such testimony." Brief for appellant at 40. See, *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017); *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

Although we do not endorse this form of questioning, we conclude that it did not prejudice Wilson. It is not entirely clear what Wilson meant by his unsolicited statement that he did not shoot anyone. If he was referring to the Bartletts, the evidence is undisputed that he did not shoot at them; if he was referring to Officer Phillips, the evidence is undisputed that he did shoot at her, causing a graze wound. Given the ambiguity of the statement and the undisputed evidence, we cannot discern a reasonable probability that but for Officer Urban's testimony that he did not believe the statement, the outcome of Wilson's trial would have been different. Therefore, we conclude that this allegation of ineffective assistance of counsel fails.

### 3. Unduly Emotional and Inflammatory Evidence

Wilson asserts that the prosecutor elicited unduly emotional and inflammatory testimony regarding a previously slain

officer and Wilson's description of the occupants of the parked car as "'a couple of [B]lack kids.'" Wilson generally asserts that this was prosecutorial misconduct and that his trial counsel was ineffective in not objecting to the testimony.

[22] We have observed that "[g]enerally, prosecutors have a duty to conduct criminal trials in a manner that provides the accused with a fair and impartial trial. They may not inflame the jurors' prejudices or excite their passions against the accused." *State v. Vazquez*, 319 Neb. 192, 220, 21 N.W.3d 615, 648 (2025), citing *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016); *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). See, also, Rule 403 ("[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). Accordingly, a prosecutor may not intentionally elicit testimony from a witness for prejudicial effect. See *State v. Vazquez, supra.*

Under these rules, we perceive no ineffective assistance of counsel.

### (a) Police Officer Previously
### Killed in Line of Duty

Upon examination by the prosecution, Officer Phillips testified that she removed her seatbelt as she approached Wilson's vehicle and put her police cruiser in park. She testified that at the moment she was getting out of her police cruiser, Wilson had his gun pointed at her. The prosecution continued:

Q And you said you already were taking off or had your seat belt off?

A Yes.

Q Why did you do that?

A Because we're taught that if you['re] going to approach. An example that was given to us in the academy, if you know you're going to do that and you're within a

safe distance, take your seat belt off prior to your traffic stop because Jimmy Wilson, Junior, essentially was not able to get out of his vehicle during his traffic stop. He was actually still buckled in his vehicle[.]

Q And when you say Jimmy Wilson, that's another officer that —

A It's an officer that was shot and killed, yes.

Q During a traffic stop?

A In his vehicle. Uh-huh.

Q Is that something during your training that is used as an example?

A Uh-huh. Yes.

Shortly after this line of questioning, the prosecutor asked another question relating the slain officer to Officer Phillips' training. Wilson's trial counsel did not object to any of the references to the slain officer.

Based on the record before us, we are not persuaded that trial counsel's performance was deficient or, even if it was deficient, that it was prejudicial. See *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023) (record on direct appeal is sufficient to conclusively determine claim of ineffective assistance of counsel if it establishes that trial counsel's performance was not deficient or that appellant will not be able to establish prejudice). We do not see how fleeting references to the slain officer during an explanation of police procedure during armed encounters could have inflamed the passions of the jury against Wilson.

(b) Wilson's Description of
Individuals in Parked Car

The jury viewed body camera footage of the statements Wilson made to an officer while receiving treatment at a hospital. In that footage, Wilson, who is white, identified the individuals in the parked car as "a bunch of Black kids." Wilson's trial counsel did not object when this exhibit was published to the jury.

Later in the trial, when cross-examining Wilson, the prosecutor asked about the individuals Wilson encountered in the parked car:

> Q You go down the street, and there is a car that's in your way, right?
>
> A Correct.
>
> Q Okay. And you — "a couple of [B]lack kids," isn't that what you said?
>
> A I said — I don't remember exactly what I said.
>
> Q "A couple of [B]lack kids," isn't that what you told the police?
>
> A Yes.
>
> Q Okay. That were in that car that was in your way, and that made you angry, didn't it?
>
> A The fact that they were in my way or they were [B]lack.
>
> Q The fact that they were in your way?
>
> A Yes.
>
> Q I don't know why you would mention that they were [B]lack?
>
> A I don't know. I was wondering why you did.
>
> Q Because you did. I'm quoting you.
>
> A Okay.
>
> Q Did you not tell the police that it was just [a] couple of [B]lack kids in the car?
>
> A I may have, yeah.
>
> Q Do you remember saying that?
>
> A I do remember saying that on the video when I watched it, yes.

Wilson's counsel did not object.

Now on appeal, Wilson claims that his counsel was ineffective in failing to object to this line of questioning, "[w]hether viewed as prosecutorial misconduct, improper evidence of a person's bad character, irrelevant, or unduly prejudicial." Brief for appellant at 48. Wilson suggests that the questioning was calculated to inflame the jurors' prejudices.

We find the record sufficient to dispose of this claim on direct appeal because, even if trial counsel's performance was deficient, Wilson cannot establish prejudice as a matter of law. See *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). Wilson's testimony about his description of the occupants of the parked car was cumulative of his recorded statements that were published to the jury before Wilson testified. Therefore, the record shows that Wilson cannot demonstrate prejudice based on his trial counsel's failure to object to the testimony. See *State v. Sawyer*, 319 Neb. 435, 22 N.W.3d 650 (2025) (failure to object to statement was not ineffective assistance of counsel because statement was cumulative of other evidence; thus, defendant could not demonstrate prejudice).

## V. CONCLUSION

For the reasons above, we conclude that Wilson's claims of ineffective assistance of counsel either lack merit, were inadequately assigned, or cannot be resolved on this appellate record.

AFFIRMED.