Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/22/2026 08:08 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
ZACHARY S. REEVES, APPELLANT.

___ N.W.3d ___

Filed May 22, 2026.    Nos. S-25-300, S-25-301.

1. **Motions to Dismiss: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews for an abuse of discretion the trial court's denial of a pretrial motion to dismiss alleging a prosecutorial conflict of interest.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Appeal and Error.** It is an abuse of discretion to make an error of law or clear errors of factual determination.
4. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
5. **Jury Instructions: Proof: Appeal and Error.** In an appeal based upon a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.
6. **Jury Instructions: Appeal and Error.** The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.
7. **Appeal and Error: Words and Phrases.** Plain error is error of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
8. **Jury Instructions.** An instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given.

9. ____. In construing an individual jury instruction, the instruction should not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole.

10. ____. If the instructions as a whole fairly present the law so that the jury could not be misled, there is no prejudicial error.

11. **Jury Instructions: Verdicts.** The purpose of instructions is to furnish guidance to the jury in its deliberations and to aid it in arriving at a proper verdict; and, with this end in view, the jury instructions should state clearly and concisely the issues of fact and the principles of law that are necessary to enable them to accomplish the purpose desired.

12. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

13. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

14. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

15. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

16. ____: ____. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

17. **Proof: Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

18. **Effectiveness of Counsel: Appeal and Error.** In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case.

19. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make

specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.
20. **Witnesses.** It is generally improper for a witness to testify as to the credibility of another witness.

Appeals from the District Court for Nemaha County: Julie D. Smith, Judge. Affirmed.

Adam J. Sipple, of Sipple Law, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Papik, J.

A county attorney filed two charges of first degree sexual assault against Zachary S. Reeves. Before trial, Reeves sought to have the charges dismissed or, in the alternative, to have the county attorney disqualified based on an alleged conflict of interest—Reeves alleged that years before, he had a sexual encounter with the county attorney's then-wife. After a hearing, the district court found the county attorney was not disqualified as a matter of law but recommended the appointment of a special prosecutor. The district court sustained the county attorney's subsequent motion to appoint a special prosecutor. At Reeves' consolidated jury trial, the special prosecutor presented evidence that Reeves sexually penetrated his accusers without their consent after he had been drinking; Reeves generally attempted to discredit his accusers. Reeves was convicted and sentenced on both charges.

Now on appeal, Reeves does not dispute the sufficiency of the evidence. But he claims that the charges should have been dismissed because of the county attorney's involvement and that a jury instruction about intoxication was in error. He also alleges several instances of ineffective assistance of counsel

related to witness credibility. We reject Reeves' arguments and affirm.

## I. BACKGROUND

### 1. Reeves Charged

In March 2023, Nemaha County Attorney Angelo Ligouri (the county attorney) filed separate criminal complaints in the county court charging Reeves with first degree sexual assault of A.C. in July 2020 and of K.G. in May 2021. The county attorney subsequently filed in the district court first degree sexual assault charges against Reeves in both cases.

### 2. Pretrial Evidentiary Hearings

In September 2023, pursuant to Neb. Rev. Stat. §§ 27-404 (Cum. Supp. 2024) or 27-414 (Reissue 2016), the county attorney filed notices of the State's intent to offer the testimony of K.G. in the case involving A.C. and of A.C. in the case involving K.G., along with the testimony, in both cases, of M.H., who had also reported that Reeves assaulted her. Reeves filed corresponding motions in limine seeking to preclude this evidence. At hearings on the motions, the county attorney represented the State.

According to evidence at the hearings, Reeves owned a bar and grill in Peru, Nebraska, that was a popular hangout and workplace for local college students. In September 2022, college student M.H. reported to the Nemaha County sheriff's office that Reeves had assaulted her while they were on a backroad.

The district court heard evidence about the ensuing investigation of M.H.'s allegations. There was evidence that, in October 2022, Deputy Sheriff Nathan Boden and the county attorney interviewed two women employed by Reeves. One of those women said that Reeves once kissed her and that she had to "push him off" of her; this occurred on the same backroad M.H. identified in her report. Both women testified that they terminated their interview with Boden and the county

attorney because they felt their words were being twisted, misunderstood, or not "reciprocated correctly." The woman who mentioned the incident on the backroad testified that based on "the direction that the [interview] was going," she was not "interested in being involved any more."

K.G., who frequented Reeves' bar when she was a student, testified that when she heard about M.H.'s allegations, she reported to the Nemaha County sheriff's office that Reeves had sexually assaulted her in May 2021. K.G. testified at the hearing that Reeves had sexually penetrated her without her consent. There was evidence presented that on the night of the assault, K.G. obtained a sexual assault examination at a hospital and spoke to a law enforcement officer, but that for a period of time afterward, she did not return calls from law enforcement. K.G. testified that after she renewed contact with law enforcement, she spoke to the county attorney twice: the day before the hearing and the day of the hearing.

According to testimony at the hearing, the investigation of allegations against Reeves led Boden to contact A.C. She testified that, in total, she had spoken with the county attorney twice on the phone and met with him once, which was the day before the hearing. According to A.C., during the in-person interview, she and the county attorney went through her testimony and "what answers should be," but she also denied that the county attorney told her how to answer.

There was evidence at the hearing that during an in-person interview with Boden, A.C. recounted that she had a nonconsensual sexual encounter with Reeves in early July 2020. There was other evidence that in the weeks after the alleged sexual assault, A.C. told several people about it, including her sister, a coach, and a counselor, but that she decided at that time not to report the incident to law enforcement. In her interview with Boden, A.C. initially denied that Reeves sexually penetrated her during the encounter. But when the legal definition of sexual penetration was explained to A.C. later in the

investigation, she acknowledged that Reeves had penetrated her vagina without her consent.

There was conflicting evidence about who clarified the legal definition of sexual penetration for A.C. She testified that it was the county attorney during a phone conversation about a week after her initial interview. Boden initially testified that he believed he may have clarified for A.C. the legal definition of sexual penetration, but he was not certain; Boden did not recall having followup conversations with the county attorney about it. Later in the hearing, Boden testified that he did not clarify the definition for A.C. during his one interview with her but that he may have spoken to A.C. over the phone and explained it then. Boden denied that the county attorney participated in the phone call.

Boden eventually interviewed Reeves, who denied any nonconsensual sexual encounters with K.G. and A.C. A video of the interview was received in evidence. During the interview, Reeves accused the county attorney, who was not present, of conducting a "witch hunt" because Reeves had a "history" with the county attorney's ex-wife "right when they got divorced." Reeves asserted in the interview that the county attorney should have "stepped out of this before" because the county attorney "threatened [him] before back when [Reeves] and [the county attorney's ex-wife] messed around." Reeves expressed the belief that the county attorney could not prosecute him due to his "conflict of interests," and Reeves said he would hire a lawyer to sue the county attorney. Reeves also said that his two employees had told him that during their interview, the county attorney tried "to coach them and tell them to say stuff."

The district court sustained the State's motions to allow K.G. and A.C. to testify pursuant to § 27-414. In so ruling, the district court found, among other things, clear and convincing evidence that Reeves committed the offense of sexual assault against K.G. and against A.C.

### 3. Pretrial Motions for Relief From Prosecutorial Misconduct

#### (a) Motions for Relief

In June 2024, Reeves filed identical motions for relief from prosecutorial misconduct in each case, making specific allegations that the county attorney had a conflict of interest relating to "sexual encounter(s)" or a "sexual relationship" that Reeves had with the county attorney's then-wife during the marriage. According to the motions, the county attorney knew about the "encounter(s)" before filing charges against Reeves for the sexual assaults of K.G. and A.C. Reeves requested three alternative forms of relief: (1) an order dismissing the charges against him, (2) an order barring testimony of all witnesses who had direct contact or interviews with the county attorney's office because the contact rendered them incompetent to testify, or (3) an order disqualifying the county attorney's office and appointing a special prosecutor.

#### (b) Evidentiary Hearing

At an evidentiary hearing on the motions, the records of the previous hearings were received in evidence. The county attorney represented the State.

The county attorney's ex-wife testified that she believed she had a sexual encounter with Reeves prior to March 2016 while she and the county attorney were still married, but separated, and while she was dating a man whom she would later marry. She testified that she and Reeves had spent the evening drinking with friends and that she did not remember having a sexual encounter with Reeves. However, she also testified that she woke up later wearing different clothes and heard rumors that she had a sexual encounter with Reeves. At the hearing, the county attorney's ex-wife characterized the encounter as a "sexual assault" or "[o]ne-night assault." She testified that when the county attorney learned of the sexual encounter, he was upset by it, but she did not tell him that it

was an assault. It was not clear from her testimony when the county attorney learned of the sexual encounter.

Reeves' sister testified that prior to the county attorney's divorce, Reeves and the county attorney's ex-wife once spent the night at her house, and she observed them in the middle of the night "on the couch cuddled up under a blanket." Reeves' sister testified that the county attorney found out about this incident and that it created "issues" and "some turmoil" between the county attorney and his ex-wife. It was not clear from this testimony when the county attorney learned about any sexual encounter between his ex-wife and Reeves.

The employee who had reported that Reeves had tried to kiss her while they were on a backroad testified that during her interview with Boden and the county attorney, the county attorney asked all the questions. She recalled that she left the interview out of frustration that the county attorney "was kind of hinting, leaning towards [her] doing something against [Reeves] or saying a story against [him]." She testified that she and the other employee were uncomfortable with the questioning because the county attorney was "twisting" her words and "trying to make [her] have a story that [she] wasn't willing to say, didn't want to have."

Boden testified that he investigated Reeves' case, prepared the arrest warrant and probable cause affidavit, and presented the matter to the county attorney, who decided what charges to bring against Reeves. He denied that the county attorney had influenced him or interfered with the investigation. Boden also denied that during the interview the county attorney twisted the statements of the employee who said Reeves had tried to kiss her.

Boden testified that he spoke to A.C. on the phone several days after her initial interview to clarify the legal definition of sexual penetration and to determine whether it had occurred with Reeves. He was not aware whether the county attorney also spoke to A.C. about the matter of penetration. At the hearing, Boden denied having information indicating that

the investigation was a "witch hunt," as Reeves had claimed during his interview. Boden also denied being aware of any support for Reeves' claim that the county attorney had "tried to coach a couple girls."

### (c) Motions for Relief Overruled, but Special Prosecutor Appointed

The district court denied Reeves' requests for relief from prosecutorial misconduct. Relevant here, the district court found that the county attorney was not disqualified as a matter of law. But to avoid "the appearance of impropriety and the muddying of the waters," the district court suggested that the county attorney disqualify himself and request a special prosecutor. The district court explained that it made this recommendation "not on the basis of prosecutorial misconduct, not because [the county attorney] initiated this case with a vendetta against [Reeves], and not because he is attempting to avoid his duties as Nemaha County Attorney, but rather because [his ex-wife's] testimony . . . *expressly accused* [Reeves] *of sexually assaulting her.*" (Emphasis in original.) The district court "suspect[ed] that this accusation came as a surprise to the attorneys for both parties."

The county attorney subsequently moved to disqualify himself and his office and for the appointment of the Nebraska Attorney General's office to prosecute the cases. The district court sustained the motions, and the Attorney General's office represented the State in all subsequent proceedings.

### 4. TRIAL AND SENTENCING

There is no dispute that at a consolidated trial, the jury heard testimony that supported the State's position that Reeves committed first degree sexual assault against K.G. and A.C.; K.G. and A.C.'s accounts of the sexual assaults were substantially similar to their testimony at the pretrial evidentiary hearings. There was also evidence, including Reeves' own statements to law enforcement, that before each of the sexual encounters, Reeves drank multiple alcoholic beverages, and

that he was "drunk" prior to the sexual encounter with A.C. Reeves tried to impeach K.G.'s and A.C.'s credibility and otherwise demonstrate that the sexual encounters were consensual. We include additional details about the evidence and jury instructions in the analysis section below.

The jury ultimately found Reeves guilty on both charges of first degree sexual assault. The district court accepted the verdicts and adjudged Reeves guilty. The district court sentenced Reeves to a term of 5 to 20 years' imprisonment for each offense, to be served concurrently.

## II. ASSIGNMENTS OF ERROR

Reeves assigns, condensed and restated, that the district court erred in (1) providing a jury instruction regarding intoxication and (2) failing to dismiss the charges based on the county attorney's alleged conflict of interest.

Reeves also assigns three specific instances of ineffective assistance of trial counsel, when his trial counsel (a) failed to object to Boden's testimony that one of Reeves' employees gave false testimony, (b) failed to introduce timekeeping records from the bar to impeach "A.C.'s testimony that she quit working for Reeves immediately after her encounter with him," and (c) failed to introduce into evidence a video to impeach "A.C.'s testimony she did not spend time in the bar after the encounter when Reeves was present."

## III. STANDARD OF REVIEW

We set forth the applicable standards of review in the relevant sections of the analysis below.

## IV. ANALYSIS

### 1. Prosecutorial Conflict of Interest

Reeves argues that the district court erred by denying his pretrial motions to dismiss the cases on the grounds that the county attorney had a conflict of interest. As we will explain, assuming without deciding that Reeves preserved the issue for appellate review by filing pretrial motions to dismiss, but

no such motions on the same grounds at or after trial, we are unconvinced that the district court erred in declining to dismiss the cases.

### (a) Standard of Review

[1] Reeves does not suggest what standard of review should apply to the denial of a pretrial motion to dismiss based on a prosecutor's alleged conflict of interest, and we do not appear to have previously identified one. We have, however, held that whether an apparent conflict of interest justifies the disqualification of prosecutors is a matter committed to the discretion of the trial court. See *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013) (whether apparent conflict of interest justifies disqualification of other members of prosecuting office after trial court has granted prosecutor's motion to withdraw is matter committed to discretion of trial court). See, also, *U.S. v. Watkins*, 107 F.4th 607 (7th Cir. 2024) (whether conflict of interest justifies disqualifying prosecutor is matter committed to discretion of trial court). In other bids for relief due to prosecutorial misconduct, we have also applied an abuse of discretion standard of review. See, e.g., *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019) (decisions regarding motions for mistrial due to alleged prosecutorial misconduct are directed to discretion of trial court and will be upheld in absence of abuse of discretion); *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016) (appellate court reviews motion for new trial on basis of prosecutorial misconduct for abuse of discretion by trial court). Federal courts have reviewed a lower court's decision to deny a motion to dismiss based on prosecutorial misconduct for an abuse of discretion. See, e.g., *U.S. v. Ramos-González*, 775 F.3d 483 (1st Cir. 2015); *U.S. v. Bryant*, 655 F.3d 232 (3d Cir. 2011). Considering all the foregoing authority, we will review for an abuse of discretion the district court's denial of Reeves' pretrial motions to dismiss alleging a prosecutorial conflict of interest.

[2,3] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *McGuire, supra*. It is an abuse of discretion to make an error of law or clear errors of factual determination. *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

### (b) Merits

According to Reeves, he demonstrated at a pretrial hearing that the county attorney had a personal interest in targeting Reeves for prosecution because, at the time the county attorney investigated and charged Reeves, the county attorney knew of a prior sexual encounter involving Reeves and the county attorney's then-wife. Reeves argues the county attorney's participation in the cases, despite this personal interest, violated his right to due process. Reeves contends that the county attorney's actions required the district court to dismiss the charges against him before trial. He now asks us to vacate his convictions for the same reason.

In *State v. Galindo*, 315 Neb. 1, 54, 994 N.W.2d 562, 599 (2023), we expressed agreement "with those courts that have recognized that there may be situations in which a prosecutor's personal interests so undermine the fundamental fairness of a criminal proceeding that the defendant's right to due process is violated." In *Galindo*, however, it was not necessary for us to decide the standard used to determine when such a conflict of interest arises. Instead, we assumed in that case that a defendant seeking postconviction relief had alleged the type of personal interest on the part of a prosecutor that could rise to the level of a due process violation, but we determined that any due process violation amounted to only harmless error.

We follow a similar course here. We acknowledge the State's argument that, at the time of the alleged sexual encounter involving Reeves and the county attorney's then-wife, the county attorney and his then-wife were in the midst

of divorce proceedings and living separately and his then-wife was in a relationship with another man whom she eventually married. More specifically, we acknowledge that these facts may suggest the county attorney lacked the same level of personal interest in targeting Reeves that he would have had if the encounter involving Reeves and his ex-wife had occurred in the midst of a previously thriving marriage. Even so, we will assume, purely for the sake of this analysis, that the county attorney had the type of personal interest in targeting Reeves that could rise to the level of a due process violation or otherwise require disqualification. As we will explain, however, even with that assumption, we find that the district court did not err in declining to dismiss the charges against Reeves as Reeves requested.

Reeves' primary argument that the district court was obligated to grant his motions to dismiss the charges against him is that the county attorney's involvement in the cases amounted to structural error. Structural error is the term the U.S. Supreme Court has used to refer to "a very limited class of errors that trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole." See *United States v. Davila*, 569 U.S. 597, 611, 133 S. Ct. 2139, 186 L. Ed. 2d 139 (2013) (internal quotation marks omitted). Reeves argues that because there was structural error, he is entitled to automatic reversal of his convictions.

In support of his argument for structural error, Reeves relies on *Young v. U. S. ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) (*Vuitton*). In *Vuitton*, the U.S. Supreme Court reversed the criminal contempt convictions of several individuals accused of violating an injunction. The prosecutors in the criminal contempt proceedings were private attorneys appointed by the trial court as special prosecutors. Those attorneys were counsel to an opposing party to the injunction and thus were in a position to "use the threat of prosecution as a weapon in civil negotiations." *State v. Galindo*, 315 Neb. 1, 56, 994 N.W.2d 562, 600 (2023).

The U.S. Supreme Court held that the trial court "erred in appointing as prosecutors counsel for an interested party in the underlying civil litigation." *Vuitton*, 481 U.S. at 802. A four-justice plurality also concluded that "[g]iven the fundamental and pervasive effects of such an appointment," the presence of conflicted prosecutors was not subject to harmless error review. *Id*., 481 U.S. at 814.

Reeves argues that we should follow *Vuitton*, conclude that the county attorney's involvement in the cases was structural error, and vacate his convictions without additional analysis. We are not persuaded we should do so for multiple reasons.

First, *Vuitton* does not compel us to find that a prosecutorial conflict of interest amounts to a structural error requiring automatic reversal. As we explained in *Galindo, supra, Vuitton* was decided based on the U.S. Supreme Court's supervisory power over contempt proceedings in federal court, rather than the Due Process Clause. Additionally, the portion of *Vuitton* concluding the appointment of conflicted prosecutors was structural error was joined by only four justices, not a majority of the Court.

Furthermore, even if *Vuitton* were binding authority, we find it distinguishable. The *Vuitton* plurality concluded that the appointment of the special prosecutors was not subject to harmless error review because it is "an error whose effects are pervasive." 481 U.S. at 812. The plurality explained that because a prosecution involves many discretionary decisions, it would be extremely difficult to determine how the appointment affected the ultimate outcome. While Reeves argues the same is true here, he ignores a major factual difference between *Vuitton* and this case: In this case, the prosecutor with the alleged conflict of interest stepped aside and the case was tried by a prosecutor for whom there was no alleged conflict of interest.

In our view, the fact that the prosecutor's office that tried the case and obtained the convictions against Reeves was not alleged to have a conflict of interest undermines any argument

for structural error. Structural errors "infect the entire trial process." *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). But most constitutional errors are not structural errors. See *Rose v. Clark*, 478 U.S. 570, 578, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (structural errors are "the exception and not the rule"). Rather, the U.S. Supreme Court has instructed that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Id.*, 478 U.S. at 579. Finally, "a defining feature of structural error is that the resulting unfairness or prejudice is 'necessarily unquantifiable and indeterminate,' . . . such that 'any inquiry into its effect on the outcome of the case would be purely speculative.'" *U.S. v. Gonzalez-Huerta*, 403 F.3d 727, 734 (10th Cir. 2005) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), and *Satterwhite v. Texas*, 486 U.S. 249, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988)).

In this case, not only did Reeves have counsel and a trial conducted by an impartial adjudicator, the prosecutor's office that pursued his cases through trial and obtained his convictions is not alleged to have conflicts of interest. We need not speculate about the effects of the county attorney's initial participation in the cases because the convictions were ultimately obtained by someone else. The county attorney's participation did not "infect the entire trial process." *Brecht*, 507 U.S. at 630. We reject Reeves' argument that he has demonstrated structural error and is entitled to automatic reversal.

Alternatively, Reeves argues that, even in the absence of structural error, we should reverse his convictions given the specific actions of the county attorney in the cases before the appointment of the special prosecutor. In support of this argument, Reeves emphasizes that the county attorney made the decision to charge Reeves with sexual assault in both cases. He also points to evidence regarding the county attorney's involvement in the investigation. Specifically, Reeves points

to testimony of A.C. that while she initially denied to law enforcement that Reeves penetrated her vagina, she changed that assertion after the county attorney informed her of the definition of sexual penetration under Nebraska law. He also points to testimony of his two employees who generally testified that they ended an interview with the county attorney because they were uncomfortable with his questions.

Although we do not rule out the possibility that a prosecutor with a conflict of interest could take pretrial actions that so fundamentally undermine a defendant's right to a fair trial as to require reversal of a conviction obtained by a prosecutor with no alleged conflicts, we do not find that to be the case here. As we have emphasized, the district court, at the county attorney's request, appointed a special prosecutor who tried the case and obtained the convictions at issue. While the county attorney made the decision to initially charge Reeves, once the Attorney General's office was appointed as a special prosecutor, it had the discretion to dismiss the charges if it felt they were not warranted or to pursue lesser charges. See *Asbell v. State*, 468 N.E.2d 845, 848 (Ind. 1984) (if there is "any evidence of overreaching or unethical conduct" by charging prosecutor, special prosecutor appointed after charges are filed has "the discretion to dismiss the charges"). This is thus not a case in which "we do not know and cannot now ascertain what would have happened if the prosecuting attorney had been free to exercise the fair discretion which he owed to all persons charged with crime in his court." *Ganger v. Peyton*, 379 F.2d 709, 714 (4th Cir. 1967).

Moreover, there was no evidence that the county attorney coerced or otherwise did anything improper concerning the testimony of A.C. At most, there was evidence that he explained to A.C. the definition of sexual penetration under Nebraska law, a fact Reeves' counsel could and did elicit at trial. And while two women who worked for Reeves may have testified they were not comfortable with the county attorney's questions in their interview, there was no evidence the county

attorney's conduct in that interview led to the development of damaging evidence.

Finally, we observe that this issue was only presented to the district court via Reeves' pretrial motions. As a result, at most, Reeves preserved one issue for appellate review related to an alleged conflict of interest: whether the district court should have granted Reeves' *pretrial* motions to have the charges dismissed because of the county attorney's involvement in the cases. See *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024) (basic tenet of appellate review is that issue first be presented to and passed upon by trial court). Reeves has not directed us to any examples, however, of a trial court dismissing criminal charges pretrial because of a prosecutor's conflict of interest, as opposed to merely appointing a special prosecutor. In any event, the district court determined that Reeves had failed to demonstrate that the charges against him should be dismissed based on the evidence adduced in support of the motions. We discern no abuse of discretion in that determination.

## 2. JURY INSTRUCTIONS

We next address Reeves' contentions that the district court erroneously instructed the jury about intoxication. For reasons we will explain, we perceive no reversible error.

### (a) Background

After the parties presented their evidence, the district court conducted a jury instruction conference. The State cited evidence that Reeves had been drinking alcohol before he sexually assaulted K.G. and A.C. and asked the district court to instruct the jury that voluntary intoxication is not a defense. Reeves objected and argued:

> [I]t's unnecessary . . . because there's been no argument or evidence presented to the jury in any way, shape, or form that [intoxication] is a defense [and it] could confuse the jury. They know he was intoxicated, and there's been no indication to the jury that they could find him not guilty because of his intoxication, so we think it's unnecessary.

The district court overruled the objection and gave the following instruction:

> There has been evidence that [Reeves] was intoxicated at the time that the crime for which he is charged was committed.
>
> A person who is intoxicated is criminally responsible for his or her conduct. Intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense.

The district court also instructed the jury on the elements of first degree sexual assault. That instruction directed the jury to decide whether Reeves "[s]ubject[ed]" K.G. and A.C. to "sexual penetration" "[w]ithout [their] consent" or, for A.C., when "he knew or should have known that [she] was mentally or physically incapable of resisting or of appraising the nature of her conduct." The instruction further directed, "If you decide that the state proved each element of that particular crime beyond a reasonable doubt, then you must find [Reeves] guilty of that crime. Otherwise, you must find [Reeves] not guilty of that crime." The instructions included a definition for "proof beyond a reasonable doubt." The jury was also instructed that "[n]o one of these instructions contains all of the law applicable to this case" and that it should "consider each instruction in light of all of the others."

### (b) Analysis

Now on appeal, Reeves asserts that the district court erred in instructing the jury that "[a] person who is intoxicated is criminally responsible for his or her conduct." According to Reeves, this instruction misstated the issues and was confusing because he did not claim at trial that he should be acquitted because he was intoxicated. Reeves further contends that the instruction "created [a] prejudicial risk the jury would decide the case on an improper basis, to wit: that the issue of consent should be determined against Reeves because he was

intoxicated." Brief for appellant at 16-17. Reeves posits that the instruction suggested to jurors that they must find him guilty, that is, "'criminally responsible' . . . because he was drunk," thereby diminishing the State's burden to prove him guilty beyond a reasonable doubt. *Id*.

[4] When an appellant challenges jury instructions, our standard of review is well-settled: Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Logan*, 320 Neb. 554, 28 N.W.3d 510 (2025).

[5] Generally, in an appeal based upon a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Fernandez*, 313 Neb. 745, 986 N.W.2d 53 (2023). But the State urges that the facts do not require us to use that analytical framework here.

[6,7] The State points to authority that the failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. See *State v. Briggs*, 317 Neb. 296, 9 N.W.3d 632 (2024). And we have defined plain error as error of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. See *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010). It is this rule that governs our analysis, the State contends, because Reeves' objection at the jury instruction conference was not specific enough to preserve his arguments on appeal.

The State is correct that in the context of jury instructions, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. See *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003). So, the initial question is whether the arguments in Reeves' appellate brief were raised as objections before the district court below.

When we view the record of the jury instruction conference side by side with Reeves' brief, we see one objection in common: Both before the district court and on appeal, Reeves argued that the intoxication instruction was confusing to jurors because he had not raised intoxication as a defense at trial. Reeves has preserved this alleged error, but he cannot establish the instruction was prejudicial or otherwise adversely affected a substantial right.

[8-10] We have long said that an instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given. E.g., *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024). In construing an individual jury instruction, the instruction should not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). If the instructions as a whole fairly present the law so the jury could not be misled, there is no prejudicial error. See *State v. Pope*, 305 Neb. 912, 943 N.W.2d 294 (2020).

Reading the jury instructions in this case as a whole, we conclude that the challenged instruction correctly stated the law and was not likely to confuse or mislead the jury. To begin, the instruction correctly stated the law. The language of the instruction mirrored language from Neb. Rev. Stat. § 29-122 (Reissue 2016), which provides:

A person who is intoxicated is criminally responsible for his or her conduct. Intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense unless the defendant proves, by clear and convincing evidence, that he or she did not (1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication or (2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily.

We have explained that "§ 29-122 is a 'legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions.'" See *State v. Abejide*, 293 Neb. 687, 700, 879 N.W.2d 684, 695 (2016) (citing *Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996)).

[11] We understand Reeves to have preserved an argument that although the jury instruction contained language from § 29-122, it was not a correct statement of the law as applied to this case because he did not raise a defense that put intoxication at issue. But defenses raised are not the only basis for deciding what constitutes an appropriate instruction. The purpose of instructions is to furnish guidance to the jury in its deliberations and to aid it in arriving at a proper verdict; and, with this end in view, the jury instructions should state clearly and concisely the issues of fact and the principles of law that are necessary to enable them to accomplish the purpose desired. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023). And here, Reeves does not dispute that the jury heard evidence that before sexual encounters with K.G. and A.C., he knowingly and voluntarily consumed alcohol, and, with A.C. at least, he was intoxicated. Given these facts, an instruction stating the law of § 29-122 enabled the jury to arrive at a proper verdict, that is, a verdict that did not incorrectly diminish Reeves' responsibility for his criminal conduct based on evidence that he was intoxicated.

Next, reading the instructions as a whole, as the jury was told to do, we are assured that the instruction on intoxication would not confuse the jury, even though Reeves did not raise intoxication as a defense at trial. The instructions correctly directed the jury to decide whether the State had proved the elements of first degree sexual assault beyond a reasonable doubt, and the instruction on the law related to intoxication did nothing to change those directives. To the contrary, the instruction that voluntary intoxication is not a defense assisted the jury in its duty. Read with the other instructions, it

demonstrated to the jury that whether Reeves was voluntarily intoxicated during his encounters with K.G. and A.C. had no relevance to the verdicts. Indeed, the intoxication instruction was especially helpful to the jury's determinations regarding A.C.; with respect to her, the jury may have been required to decide whether Reeves "knew or should have known that [she] was mentally or physically incapable of resisting or of appraising the nature of her conduct." Without an instruction to apprise the jury of the law regarding intoxication, a panel of laypeople may have been inclined to consider whether Reeves' intoxication prevented him from knowing whether A.C. could resist or understand her conduct, but such an approach would not have conformed to the law.

Because we are unpersuaded that the jury instruction referring to intoxication was an incorrect statement of the law or that it confused the jury, Reeves has not satisfied his burden to show that it was prejudicial or otherwise adversely affected a substantial right. See *State v. Fernandez*, 313 Neb. 745, 986 N.W.2d 53 (2023).

For similar reasons, the arguments raised by Reeves for the first time on appeal fail upon plain error review. We discern no probability of a miscarriage of justice here, where the jury instructions correctly stated the law and where, read as a whole, they would not confuse the jury.

Given all this, we conclude that the district court did not err in instructing the jury that "[a] person who is intoxicated is criminally responsible for his or her conduct."

### 3. Ineffective Assistance of Counsel

Finally, represented by new counsel on appeal, Reeves claims several instances of ineffective assistance of trial counsel. Before we address his specific claims, we recall some governing principles.

[12,13] Our appellate standard of review of such claims is well established. Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question

of law. *State v. Wilson*, 320 Neb. 728, 30 N.W.3d 165 (2026). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

[14-18] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *Wilson, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case. *Id.*

[19] When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Applying these principles in Reeves' direct appeal, we find the undisputed facts are sufficient to reject his claims of ineffective assistance of trial counsel.

## (a) False Testimony

At trial, the parties presented conflicting evidence about Boden and the county attorney's interview of two women employed by Reeves. Boden testified for the State that during the interview, the women directed him to talk to A.C. When one of those women later testified for Reeves, she denied on cross-examination by the State that she or the other woman requested that their interview with Boden and the county attorney not be recorded. She also denied that during that interview she told Boden to contact A.C. because Reeves had assaulted A.C. On rebuttal by Reeves' counsel, Boden testified that this testimony about the interview was not "truthful." Reeves' counsel did not object but immediately proceeded to cross-examine Boden about other witnesses' police interviews.

On appeal, Reeves assigns and argues that his trial counsel was ineffective in failing to object to Boden's testimony that the woman testified falsely for Reeves. Reeves argues that there could be no plausible trial strategy for allowing the State's lead investigator to opine that the defense elicited testimony that was not truthful. We pause to note that Reeves makes the same argument regarding Boden's comments on the other woman's testimony, but his brief lacks a corresponding assignment of error. Accordingly, we limit our analysis to Reeves' contentions regarding the testimony cited in Reeves' assignment of error, see *State v. Lopez, ante* p. 118, 32 N.W.3d 868 (2026), and we determine that Reeves' claim fails.

[20] We have observed that it is generally improper for a witness to testify as to the credibility of another witness. See, *State v. Wilson*, 320 Neb. 728, 30 N.W.3d 165 (2026); *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025); *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). We have also recognized that it is improper for a prosecutor to inquire of a witness whether another person may or may not have been telling the truth. *Id.* We have cautioned that the credibility of a witness is the province of the fact finder and that no witness, expert or otherwise, should give an opinion that another

mentally and physically competent witness is or is not telling the truth. See *Wilson, supra* (citing *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989)).

But even assuming the foregoing propositions support Reeves' claim that his counsel performed deficiently in not objecting to Boden's testimony that Reeves' employee did not give a "truthful" account of her interview, Reeves cannot demonstrate prejudice. In the context of an ineffective assistance of counsel claim, we have declined to find prejudice where, in response to a successful objection, the prosecutor could be expected to simply rephrase the question in a way that elicited the same information, but without asking the witness to comment directly on the veracity of another witness. See *Vazquez, supra*. Likewise, even if Reeves' counsel had objected to Boden's testimony about the woman's veracity, the State could have elicited the same information without asking Boden to remark on her truthfulness. We conclude that Reeves cannot show a reasonable probability that the jury would have acquitted him had such an objection been made.

### (b) Timekeeping Records

Reeves claims ineffective assistance of trial counsel related to whether A.C. avoided Reeves after the alleged sexual assault. A.C. testified on direct examination by the State that she quit her job at the bar "[a]round a week-ish" after the alleged assault and that she was never alone with Reeves after the alleged assault. On cross-examination by Reeves' counsel, A.C. initially denied working approximately 16 shifts over the month following the alleged early July 2020 assault and later testified that she could not recall. Reeves' counsel referred to the bar's timekeeping records and marked them as an exhibit but did not offer them into evidence. Reeves' counsel asked A.C. whether she worked on specific dates in early August 2020, and A.C. responded that she did not recall and denied that looking at the records would refresh her memory because she "[didn't] really remember that time that much." A.C.

admitted that the timekeeping records shown to her by Reeves' counsel listed her as having worked on August 2 but that she was not sure whether the records were accurate.

Reeves' counsel later elicited testimony from Reeves' sister, who was also the bar's bookkeeper, that A.C. returned to the bar "[q]uite a few" times after the alleged assault to work or to socialize with friends. According to Reeves' sister, A.C. worked at the bar until August 1, 2020; she recalled that at a special event at the bar that day, A.C. had a disagreement with Reeves and "walked out."

During closing arguments, Reeves' counsel reminded the jury that the timekeeping records showed that A.C. worked 16 shifts after the alleged assault and that Reeves' sister testified that A.C. worked on August 1, 2020.

On appeal, Reeves assigns and argues that his counsel was ineffective in failing to introduce the timekeeping records to impeach A.C.'s testimony that she quit working for Reeves immediately after the alleged sexual assault. We read Reeves' brief to argue that his trial counsel was deficient in not offering the timekeeping records into evidence because the records would have generally discredited A.C. as a witness and demonstrated that she did not act like she had been sexually assaulted by Reeves.

Even if Reeves has established that his trial counsel was deficient, he cannot show that he was prejudiced. Although the timekeeping records were not offered into evidence for the jury to review, the questions posed to A.C. by Reeves' counsel conveyed to the jury that the timekeeping records contradicted A.C.'s testimony that she quit working for Reeves soon after the alleged assault. Reeves' counsel repeated the point for the jury during closing arguments. What is more, Reeves' counsel presented the testimony of Reeves' sister that A.C. worked on August 1, 2020, a date several weeks after the alleged assault. In light of all this, Reeves cannot show a reasonable probability that the result of Reeves' trial would have

been different if his trial counsel had offered the timekeeping records into evidence.

### (c) Video

In another attempt to establish that A.C. did not avoid Reeves, Reeves' counsel elicited testimony from A.C. that she occasionally returned to the bar as a patron after the alleged assault to see her friends. A.C. testified that she checked ahead of time to ensure that Reeves was not at the bar and that she was not in the same room as Reeves. A.C. did not recall being at the bar with Reeves and K.G. "after this whole incident." A.C. denied that a video of her, Reeves, and K.G. at the bar would refresh her memory because, although she would be able to identify herself, she would not be able to recollect whether the video was taken before or after the alleged assault. Reeves' counsel did not offer any such video into evidence or indicate that it had been marked as an exhibit.

Reeves assigns and argues that his counsel was ineffective in failing to introduce the video to impeach A.C.'s testimony that after the alleged assault, she did not spend time at the bar while Reeves was present. Again, we understand Reeves to argue that his trial counsel performed deficiently in not offering the video into evidence to discredit A.C. as a witness in general and to demonstrate that she did not behave like Reeves had sexually assaulted her.

We question whether Reeves' counsel could have laid sufficient foundation for the video to be received as an exhibit. But even assuming without deciding that Reeves has demonstrated his trial counsel performed deficiently in not offering the video into evidence, he cannot demonstrate that any such deficient performance prejudiced him. As discussed above, defense counsel already impeached A.C.'s testimony that she quit working for Reeves soon after the alleged sexual assault, communicating to the jury that A.C. did not avoid Reeves as she claimed she had. Because the jury was already aware of evidence that A.C. returned to the bar during the weeks after

the alleged assault, we do not see a reasonable probability that the jury would have acquitted Reeves had his trial counsel offered the video into evidence.

### (d) Cumulative Error

Finally, Reeves argues that the foregoing claims of ineffective assistance of counsel "in combination" were prejudicial to him. Brief for appellant at 26. He does not mention cumulative error in his assignments of error. But to the extent that Reeves makes a claim for relief under the cumulative error doctrine, see *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023), he cannot prevail. Recently, in *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025), we observed that we have not expressly held that meritorious claims of ineffective assistance of counsel are properly included in a cumulative error analysis. Even assuming ineffective assistance claims could be considered part of a cumulative error analysis, we held that the result in *Vazquez* would not have supported finding cumulative error because the assigned errors had no merit. For the same reason here, any claim of cumulative error that Reeves makes must fail.

## V. CONCLUSION

Unpersuaded by Reeves' claims of district court error and his claims of ineffective assistance of trial counsel, we affirm.

AFFIRMED.